UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Justin Paulo,

                    Plaintiff

        v.

Brian Williams, et al.,

                    Defendants

Case No.: 2:19-cv-00474-CDS-NJK

**Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, and Denying Plaintiff's Motion for an Injunction**

[ECF Nos. 88, 108, 114]

This is a 42 U.S.C. § 1983 civil rights action brought by pro se plaintiff Justin Paulo. The complaint alleges seven causes of action: 1) Eighth Amendment Cruel and Unusual Punishment claim involving lack of outdoor exercise time; 2) a First Amendment Free Exercise claim, 3) a Religious Land Use and Institutionalized Persons Act (RLUPIA) claim, 4) a Fourteenth Amendment Equal Protection claim, 5) an Establishment Clause claim for denial of the common fare diet; and 6) two Eighth Amendment Cruel and Unusual Punishment claims for denial of dental treatment. ECF No. 27. Paulo also brings a motion for preliminary injunction in connection with his first cause of action, requesting that the court require defendants to provide adequate and regular outdoor exercise. ECF No. 114.

For the reasons set forth herein, I grant in part and deny in part Paulo's motion for summary judgment (ECF No. 108) and grant in part and deny in part defendants' motion for summary judgment (ECF No. 88). I further deny Paulo's request for a preliminary injunction (ECF No. 114) given that I grant defendants' summary judgment on Count I.

I.      **Legal Standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

At the summary judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

Summary judgment proceeds in a burden-shifting step analysis. The burden starts with the moving party. A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, and other evidence which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden of showing the absence of a material and triable issue of fact, the burden then shifts to the opposing party, who must present significant probative evidence tending to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002).

**II.     Discussion**

Applying the above legal standard, I first address Paulo's motion for summary judgment, finding that Paulo is entitled to partial summary judgment on Counts II and III and denying the rest. I then address defendants' motion for summary judgment, finding that defendants are entitled to partial summary judgment on Counts I, IV, V and VI and denying the rest.

*A.   Paulo's motion for summary judgment is granted in part and denied in part.*

For motions where the moving party will bear the ultimate burden of proof at trial, such as with plaintiff's cross-motion for summary judgment here, plaintiff bears the burden of proof on all essential elements of his claims. *Southern Cal. Gas Co. v. Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). He also has, as the moving party, the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson*, 477 U.S. at 256. Stated otherwise, Paulo must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr*, 285 F.3d at 773.

Pro se complaints and motions from prisoners are construed liberally. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[C]ourts must construe pro se pleadings liberally").

a.   Count I: (Eighth Amendment)

Paulo moves for summary judgment on Count I, alleging that from January 2017 and continuing into the present, Paulo has been subjected to inadequate opportunities for outdoor exercise in contravention of the Eighth Amendment. ECF No. 108 at 18–28. Defendants respond that Paulo's Eighth Amendment claim is barred by the Prison Litigation Reform Act (PLRA) because he failed to fully exhaust his available administrative remedies prior to filing his suit in federal court. ECF No. 88 at 5.

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA)." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C. § 1997e). "To that end, Congress enacted a variety of reforms

designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit." *Id.* at 204. The PLRA's exhaustion provision states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

In Nevada, the remedies available to inmates are promulgated under Nevada Department of Corrections Administrative Regulation 740 (AR 740). AR 740's purpose is to "set forth the requirements and procedures of the administrative process that [Nevada Department of Corrections (NDOC)] inmates must utilize to resolve addressable grievances and claims including . . . any [] tort or civil rights claim relating to conditions of confinement." *Welch v. Liggett*, 2023 WL 158603, at *3 (D. Nev. Jan. 11, 2023). "An inmate whose grievance is denied in its entirety may appeal the grievance to the next level." *Id.* The grievance structure is essentially a multi-level dispute resolution mechanism, under which an inmate must satisfy each level's substantive and procedural requirements before filing a higher-level grievance. *Id.* It requires inmates to first pursue resolution via alternative means, "such as discussion with staff or submitting an inmate request form." *Id.* Once an inmate has exhausted alternative means, he may file an informal grievance. *Id.* If that fails to provide the requested relief, the inmate may file a first-level grievance, and if that fails, a second-level grievance. *Id.* An inmate exhausts his administrative remedies either after a denial of the second-level grievance, or "if the [g]rievance is '[g]ranted' at any level." *Id.*

Exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Williams v. Baca*, 2016 U.S. Dist. LEXIS 56645,

*6 (D. Nev. April 5, 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). The Supreme Court has recognized three situations in which an administrative remedy is effectively "unavailable," thus excusing a prisoner's performance: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) if it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Fordley v. Lizarraga*, 18 F.4th 344, 351 (9th Cir. 2021) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

On July 9, 2018, Paulo filed an informal level grievance (No. 2006-30-68476) in connection with his Eighth Amendment claim. ECF No. 89 at 63–64. The informal grievance was denied on August 14, 2018. *Id.* at 62. Paulo then submitted a first level grievance on August 13, 2018. *Id.* at 60. It was denied on August 21, 2018, for failing to "attach the previously filed Informal Grievance." *Id.* at 59. Paulo resubmitted his first level grievance on August 27, 2018, which was denied on the merits on September 13, 2018. *Id.* at 55. He then submitted a second level grievance on September 24, 2018, which was rejected on September 25, 2018, for failing to attach the required documentation. *Id.* at 53. Paulo did not resubmit his second level grievance to correct this deficiency. Paulo then filed his initial complaint on March 1, 2019.[1] ECF No. 7.

As discussed, proper exhaustion under the PLRA requires compliance with the applicable prison's specific grievance procedures. *Hendrix v. Nevada*, 2018 U.S. Dist. LEXIS 183330, *14 (Nev. D. Sept. 18, 2018) (quoting *Jones*, 549 U.S. at 202). The record indicates that Paulo

---

[1] Paulo began a new round of grievances (No. 2006-309-7460), starting with an informal grievance on February 18, 2020. Defendants allege that these grievances were not perfected until October 20, 2020, after Paulo filed his First Amended Complaint on August 10, 2020. Paulo argues that defendants' over-60 day delay in responding to his second level grievance submitted on May 27, 2020 effectively meant that the administrative process was not "available" to him as a matter of law. ECF No. 111 at 4. Because Paulo's initial complaint and amended complaint assert the same Eighth Amendment claim, the initial complaint is the proper yardstick for exhaustion. *Baca*, 2016 U.S. Dist. LEXIS 56645, *11–12 n3. Thus, this court focuses its analysis on the first round of grievances prior to the initial complaint.

failed to submit a compliant second level grievance and thus did not properly exhaust his administrative remedies. *See Welch*, 2023 WL 158603, at *6. Despite Paulo's contentions, there is no evidence that any machination was underfoot in the prison's rejection of Paulo's grievances on procedural grounds. Indeed, Paulo was promptly alerted each time of the procedural issue and given an opportunity to resubmit. ECF No. 89 at 52–64. When Paulo *did* heed the prison's instruction to resubmit the proper paperwork on his rejected first level grievance, the prison duly responded on the merits. *Id.* at 53. Paulo had ample opportunity to correct his second level grievance as well but chose not to. Though Paulo alleges that defendant Hubbard-Pickett confiscated his grievance because the grievance coordinators had purportedly "lost" his related documents (ECF No. 108 at 18–19), he provides absolutely no evidence supporting this claim.[2] Even so, there is nothing in the record to suggest that Paulo could not have resubmitted a compliant second level grievance—as expressly advised by the prison to do—prior to filing suit. The court also notes that Paulo was able to successfully exhaust his grievance process on his other six claims, seemingly without any issue.

I find that an administrative remedy was "capable of use" at the time that Paulo filed his complaint on March 1, 2019, and thus that Paulo's failure to properly exhaust his available administrative remedies prior to filing suit bars his claim. *See Sims v. Walker*, Case No.: 17-cv-00722-CAB-JLB, at *11 (S.D. Cal. June 4, 2018) ("As a practical matter, administrative remedies were capable of use; at hand because Plaintiff was utilizing these processes at the time he filed suit.") (internal quotation marks and citation omitted). Thus, I decline to grant summary judgment on Paulo's first cause of action as I find it barred under the PRLA.

### b.   Counts II, III, IV & V (Claims regarding the common fare diet)

Paulo moves for summary judgment on Counts II, III, IV, and V on the basis that the state denied him a religious diet accommodation. The following facts inform Paulo's allegations

---

[2] The court also notes that given that the grievances in question are before the court in evidence, it seems unlikely that they were "lost."

for Counts II, III, IV, and V. Paulo is a non-denominational Buddhist. ECF No. 108 at 28. Buddhist inmates are pre-approved for the alternative/meatless diet but not for the common fare diet. ECF No. 88 at 4. Inmates, including Buddhists, are permitted to apply for the common fare diet by (a) submitting a Faith Group Affiliation Declaration Form and (b) submitting a diet accommodation request to the institutional chaplain. *Id.* On January 15, 2019, Paulo filled out and submitted his religious faith group declaration form. *Id.* at 5. On February 25, 2019, Paulo requested the common fare diet. *Id.* In his request, Paulo stated that he believed that "to fully exercise my religion I need a nature-based diet with fresh and raw vegetables, fruit, nuts and fish. I don't see any diet fully consistent with my beliefs @ NDOC but common fare is closest." *Id.* His request was denied by defendant Calderin. *Id.* The Religious Review Team subsequently denied Paulo's internal grievances appealing the decision, citing the same reason for the initial rejection: that the existing alternative meatless diet was "more compatible with Buddhism[.]" *Id.*

I address Paulo's RLUIPA claim first.

### i.   RLUIPA (Count III)

Paulo claims that defendants violated RLUIPA by denying his request to be placed on the common fare diet, thus substantially burdening his ability to exercise his religious beliefs. RLUIPA represents a "congressional effort[] to accord religious exercise heightened protection from government-imposed burdens[.]" *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). Under RLUIPA, "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution' unless the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'" *Id.* at 712 (quoting U.S.C. § 2000cc-1(a)(1)-(2)). RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).

### 1.   Sincerity

"Although RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion, . . . [it] does not preclude inquiry into the sincerity of a prisoner's professed

religiosity." *Cutter*, 544 U.S. at 725 n.13 (internal quotation marks and citation omitted). In other words, "the 'truth' of a belief is not open to question, [but] there remains the significant question whether it is 'truly held.'" *United States v. Seeger*, 380 U.S. 163, 185 (1965). This "threshold question of sincerity . . . must be resolved in every case. It is, of course, a question of fact[.]" *Id.* But while "the sincerity inquiry is important, it must be handled with a light touch, or 'judicial shyness.'" *Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159 at 1167 (W.D. July 10, 2023) (quoting *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (citation omitted)).

Defendants do not directly address the sincerity of Paulo's beliefs, neither explicitly challenging nor accepting it. Instead, they assert that Paulo cannot demonstrate that he suffered a substantial burden on the free exercise of his religion. ECF No. 109 at 6–10. But they do not argue that his religious beliefs are not sincerely held.

Given that defendants proffer no argument or evidence that Paulo's religious beliefs are insincere, and considering the "judicial shyness" that I must employ as to sincerity at this stage, I thus find that Paulo is sincere in his religious beliefs. *See Moussazadeh*, 703 F.3d at 792.

2.   Substantial burden and compelling government interest

The next question is whether defendants' decision to deny Paulo the common fare diet places a substantial burden on his freedom to exercise his religion, and if it does, whether there is a compelling government interest for doing so. "To constitute a substantial burden, a limitation of religious practice 'must impose a significantly great restriction or onus upon such exercise.'" *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). Courts "have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (citation omitted).

Here, defendants outright denied Paulo the ability to partake in the common fare diet, the "closest" available prison diet to the "nature based diet with fresh & raw vegetables, fruit, nuts, and fish" that his religious principles require. ECF No. 109 at 7–8. Defendants argue that

not receiving this diet is not a substantial burden, or indeed any burden at all, given that there is already an alternative meatless diet available for Buddhists that is "in line with the 'nature-based diet' he is seeking." *Id.* at 7. They further complain that neither of the unauthenticated, undated and unattributed writings that Paulo submitted entitled "The Case Against Animal Slaughter," and "Reframing Vegetarianism" stands for the proposition that Paulo is entitled to common fare or that a fresh diet is a central tenet of Buddhism. *Id.* at 6–7.

This is precisely the kind of reasoning that RLUIPA was enacted to prevent. It is well established that "RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion[.]" *Cutter*, 544 U.S. at 725 n.13. Defendants seemingly argue that because there is already a Buddhist-specific diet available, that in and of itself is a sufficient basis on which to deny Paulo's common-fare request. But defendants are not entitled to second guess whether the particular diet requested by Paulo is or is not central to his religion. Paulo has stated that the common fare diet is the best available way for him to practice his religion, and it is ironic that defendants seem to take issue with the imperfectness of the requested existing diet's fit as opposed to a hypothetical custom diet that would be more burdensome to provide. I find that the prison's outright denial to Paulo of the common fare diet is a substantial burden on his sincerely held religious practice and is improper absent a government interest to do so. *See Ross v. Sandoval*, 2018 WL 5114134 (D. Nev. Oct. 19, 2018) (issuing injunctive relief barring prison from denying Buddhist prisoner common fare diet on basis that the denial substantially burdened plaintiff's religious exercise); *Guardado v. Dzurenda*, 2022 WL 867234 (D. Nev. Mar. 22, 2022) (same); *Pompilius v. Nevada*, 2021 WL 414534 (D. Nev. 2021) (same).

Defendants fail to proffer a government interest, let alone a compelling one, in their summary judgment briefing that justifies denying Paulo access to his requested diet—a diet that was already available and provided by the state for other religions. Neither does the Chaplain's denial of Paulo's request provide any government rationale for the denial, stating that "[i]t appears that the alternative meatless diet is more compatible with Buddhism... [y]ou also note

that no diet 'fully complies with Buddhist' teaching. Your request is denied." ECF No. 103-3 at 25. Though it hardly bears noting, the government's contrary opinion on what diet is "more compatible" with a prisoner's personal religious beliefs is decidedly *not* a compelling government interest, let alone a legitimate line of inquiry. *See Cutter*, 544 U.S. at 725 n.13.

Because defendants outright banned Paulo from accessing the common fare diet—and fail to present a compelling government interest that would justify this substantial burden on his ability to exercise his religion (let alone *any* justification)—Paulo succeeds on his RILUPA claim.

For these reasons, I grant Paulo summary judgment on Count III for his RLUIPA claim and grant the requested injunctive relief. I order defendants to place Paulo on the common fare diet until further order of the court or until he requests to be removed from that diet.

## ii.   Free Exercise (Count II)

I grant Paulo's free exercise claim for similar reasons that I grant his RLUIPA claim—in this case, defendants' failure to proffer a legitimate penological interest justifying denying Paulo the common fare diet.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). However, "[t]he free exercise right . . . is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To prove a free exercise violation in the prison context, the plaintiff must demonstrate that defendants burdened the practice of his sincerely held religious beliefs "by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) (citing *Turner*, 482 U.S. at 89).

As discussed *supra*, defendants have burdened Paulo's practice of his sincerely held religious beliefs by outright denying him the requested common fare diet. While to defeat Paulo's free exercise claim, defendants need only provide a justification "reasonably related to legitimate penological interests," as also discussed *supra*, defendants neglect to provide *any* justification for denying the request. Out of an abundance of caution, however, I consider the unraised argument that prisons have a legitimate interest in "providing a simplified food service as opposed to one that would present administrative difficulties." *Shilling v. Crawford*, 2:05-CV-00889-PMP-GWF, at *28 (D. Nev. Sep. 21, 2007) (citing *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993)). While "not providing special diets is logically connected to this interest," the requested diet in question *already exists*, and defendants have given no reason to believe that adding Paulo as a recipient of that diet would in any way burden the administrative process or impose any additional hardship on the prison. *See Ross*, Case No.: 2:17-cv-02386-APG-GWF, at *6 ("While the interest in avoiding the costs of developing a new meal plan may be compelling, defendants have not argued how that interest would be affected by [plaintiff's] request for the common fare menu, given that that menu has already been developed and implemented").

For these reasons, I grant Paulo summary judgment on Count IV for his free exercise claim.

### iii.   Fourteen Amendment (Count IV)

Paulo moves for summary judgment on his Fourteenth Amendment claim. The heart of Paulo's Equal Protection claim is that defendant Calderin allegedly routinely "favors Protestant inmates over non-Protestant inmates, and that it is the policy, custom or practice of the Defendants to provide Jews, Muslims and Seventh Day Adventists with the common fare diet while denying, without legal cause, justification or penological interest, the common fare diet Buddhist inmates." ECF No. 101 at 24–25.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend.

XIV. It requires "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[T]he State must treat all religions equally, and not favor one over another." *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 918 (1990).

Prison officials may not discriminate against particular religions. *Id.* An inmate must have a "'reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners. . . .'" *Freeman*, 125 F.3d at 737 (quoting *Cruz v. Beto*, 405 U.S. 319, 321-22 (1972) (per curiam)). Equal protection requires that prisons make a good faith accommodation of prisoners' rights in light of practical considerations but does not mandate that prisons provide identical accommodations to different faiths, regardless of circumstances or how many inmates practice it. *Id.*; *see also Cruz*, 405 U.S. at 322 n.2. Religious groups must be similarly situated to implicate equal protection rights; if the burden imposed by one inmate's proposed religious diet exceeds the burden imposed by another inmate's religious diet, those inmates are not similarly situated so as to sustain an equal protection claim. *DeHart v. Horn*, 390 F.3d 262, 272 (3d Cir. 2004).

To succeed on his claim, a plaintiff must demonstrate that he was not afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths and that "officials intentionally acted in a discriminatory manner." *Freeman*, 125 F.3d at 737. In some situations, proof of discriminatory intent may be inferred from the mere fact of difference in treatment. *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991).

While Paulo's claim that defendant Calderin routinely "allows ineligible Protestants and/or non-denominational Christians to receive the common fare diet" (ECF No. 101 at 25) while denying Buddhists such as himself plausibly states an actionable equal protection claim, Paulo fails at this late stage to proffer sufficient evidence to support these allegations. The fact that a judge previously issued an injunction against defendant Calderin for his denial of the common fare diet to another Buddhist (*id.* at 101 at 24 (citing *Ross*, 2018 U.S. District LEXIS 179876)) is not helpful absent evidence that defendant Calderin has granted the common fare diet to similarly situated Protestant and/or non-denominational Christians, as alleged. Paulo's

assurance that he will provide such evidence at trial and "has the names and dates on which defendant *Calderin* will be examined" is insufficient to carry his summary judgment burden. *See Morgan v. Ocwen Loan Servicing, LLC*, No. 2:16-cv-02536-APG-PAL, at \*8 (D. Nev. Apr. 16, 2018) (stating that a plaintiff cannot win summary judgment "by promising that the needed evidence will come out at trial.") (citing *Celotex Corp*, 477 U.S. at 322); *see also Shilling*, 2:05-CV-00889-PMP-GWF, at \*33.

For these reasons, I deny Paulo summary judgment on Count IV for his Equal Protection claim.

### iv.   Establishment Clause (Count V)

Paulo moves for summary judgment on Count V, which claims that defendants "have advanced, sponsored and afforded greater privileges to prisoners who are Muslim or Jewish by allowing these prisoners to participate in the common fare program, and denying these benefits to other prisoners, like Plaintiff who spiritually require[s] common fare but [sic] not Jewish or Muslim." ECF No. 27 at 22.

The Establishment Clause of the First Amendment "prohibits any government from enacting a law that would respect the establishment of religion." *Mayweathers v. Newland*, 314 F.3d 1062, 1068 (9th Cir. 2002). "While this clause forbids Congress from advancing religion, the Supreme Court has interpreted it to allow, and sometimes to require, the accommodation of religious practices: 'This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.'" *Id.* (quoting *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987)). In the prison context, officials are required to use neutral criteria in deciding how to allocate resources among different prison religious groups so they do not end up endorsing one religion over another. *See Hartman v. Calif. Dep't of Corr.*, 707 F.3d 1114, 1126 (9th Cir. 2013) (finding that plaintiff stated an Establishment Clause claim where prison officials had created staff chaplain positions for five conventional faiths but failed to use neutral criteria in

deciding whether a growing minority religion warranted a reallocation of resources). A state regulation or practice "does not violate the Establishment Clause if (1) the enactment has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 762 (9th Cir.) (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)), *cert. denied*, 454 U.S. 863 (1981)).

Paulo fails to explain or support how the prison's differing pre-approved alternative meal options, designed for differing religious dietary restrictions, offends the Establishment Clause. Indeed, it is well established that such prison dietary programs which provide non-identical accommodations are generally permitted. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) ("Prisons need not provide every religious sect or group within a prison with identical facilities or personnel") (quoting *Beto*, 405 U.S. at 322 n. 2); *see also Curry v. Cal. Dep't of Corr.*, No. C-09-3408 EMC (pr), at *23 (N.D. Cal. Jan. 4, 2013) ("[The prison's] religious diet program offered the several diets for the permissible secular purpose of facilitating religious practice within prison and not for the purpose of advancing a particular religion."). The fact that Muslims and Jews are provided one meal option to accommodate their religious needs and Buddhists are provided another to the exclusion of the Muslim and Jewish diet does not necessarily indicate that the prison is affording "greater privileges" to the former group. *See Freeman*, 125 F.3d at 737. While this court finds that the prison violated Paulo's individual free exercise and RILUPA rights by denying his requested participation in the common fare diet (*see supra*), the court cannot, on the evidence presented, find that the entire program or even the application of it offends the Establishment Clause.

Out of an abundance of caution, I also construe Paulo's motion to include an argument that the state is not using "neutral criteria" in deciding how to allocate resources among different prison religious groups because of defendant Calderin's alleged practice of routinely approving non-denomial Christians for discretionary receipt of the common fare diet while

rejecting non-denominal Christian applicants. Backed by sufficient evidence, this argument states a colorable Establishment Clause claim. *Cf. Joseph v. Nevada ex rel. NDOC*, 2022 U.S. Dist. LEXIS 225764, *14 (Nev. D. May 12, 2022) (finding that plaintiff stated a colorable Establishment Clause claim where he alleged that "pursuant to a policy promulgated and enforced by Defendants, 'Orthodox/Rabbinic' Jews—but not Messianic Jews—were permitted to fully participate in Passover" violating the "'[t]he clearest command of the Establishment Clause'—'that one religious denomination cannot be officially preferred over another.'") (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). However, like his Equal Protection claim, Paulo fails to provide any serviceable evidence in support of this supposed practice of defendant Caldrin. *See U.S. Sec. & Exch. Comm'n v. Husain*, No. 21-55859, at *39-40 (9th Cir. June 13, 2023) ("'[C]onclusory allegations unsupported by factual data are insufficient'" for the summary judgment stage.) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)).

For these reasons, I deny Paulo summary judgment on Count V for his Establishment Clause claim.

### c.   Counts VI and VII (Deliberate Indifference)

Paulo moves for summary judgment on two separate Eighth Amendment claims alleging deliberate indifference to a serious dental need against Brian Williams, M. Naughton, Bob Faulkner, N. Peret, Michael Miner, Dr. Sanders, Dr. Castinilon and J. Cabrera in Count VI, and against Dr. Rose, N. Peret, Bob Faulkner and Michael Miner in Count VII. The heart of Paulo's deliberate indifference claims is that defendants disregarded Paulo's reports of pain due to cavities and tooth decay and delayed treatment of Paulo's painful cavities "due to a policy, custom or practice of treating only one tooth/quadrant per visit." ECF No. 108 at 37.

A two-part test governs deliberate indifference to medical needs claims under the Eighth Amendment. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat [his] condition could result in

further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant[s'] response to the need was deliberately indifferent." *Id.* (internal quotation marks and citation omitted).

"A prison official is deliberately indifferent . . . only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). "This requires more than ordinary lack of due care . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (cleaned up).

Paulo has failed to show that the defendants' response to his dental issues and pain constituted deliberate indifference.

### i. Count VI

In Count VI, Paulo sues Dentists Louisa Sanders and Albert Castellan for deliberate indifference to Paulo's dental needs between June of 2018 and January of 2020, alleging that Paulo had multiple cavities and teeth that needed to be extracted but that defendants would only treat one tooth at a time, causing him to wait "in excruciating pain" for months between treatment. ECF No. 27 at 23–24.

Paulo fails to demonstrate, however, that defendants disregarded "an excessive risk to [his] health and safety" in their response to either his requests for care or complaints of pain. As a threshold matter, Paulo fails to provide any evidence that there was a policy, formal or informal, that NDOC dentists may only treat one tooth per visit—arbitrarily extending inmates' dental discomfort. *Cf. Ross v. Sandoval*, 2018 U.S. Dist. LEXIS 71481, *2-3 (Nev. D. Apr. 25, 2018) (issuing injunction that prison may not defer treatment for weeks or months based on an alleged policy or practice that "limits the provision of treatment to 'one tooth at a time,' or 'one quadrant at a time'" and should instead be based on "reasonably available dental treatment"). Beyond the dentists' affirmations that no such policy exists, its existence is also belied by the fact that Dr.

Castellan extracted two of Paulo's teeth during a single visit on July 17, 2018. ECF No. 88 at 6. The record instead indicates that the dentists made decisions based on independent medical judgments about how many teeth to treat at any given appointment. ECF No. 90 at 23; ECF No. 103-1 at 9.

Further, though not always as quickly as he might like, Paulo was consistently scheduled for dental visits in response to his kites. He was treated in July, September, and November of 2018; in January, April, May, June, and July and August of 2019; and February of 2020 and there is no evidence that defendants intentionally delayed Paulo's treatment. *See Towns v. Anderson*, 2019 *U.S. Dist. LEXIS 84300*, *28-29 (W.D. Wis. May 20, 2019) (denying deliberate indifference claim because "staff responded to plaintiff's requests for care and [] plaintiff was seen regularly—albeit not as often as he would have liked—by a physician within or outside the prison. . . and Plaintiff has failed to present any evidence that [any of the defendants] ignored his requests to see a physician, refused to schedule him for an available appointment or intentionally delayed any appointment").

Even to the extent that there were any undue delays in scheduling Paulo for an appointment, "a delay alone is not sufficient to establish deliberate indifference; the prisoner must also show that the delay led to further injury." *Hano v. Nevada*, 2020 U.S. Dist. LEXIS 212476, *8 (Nev. D. Nov. 13, 2020) (citing *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). The only harm that Paulo alleges resulted from any delayed treatment is pain. EFC No. 108 at 38. While pain alone can be a sufficient "disregard[ed] excessive risk to inmate health and safety," the record indicates that defendants were not indifferent or unresponsive to Paulo's complaints of pain: defendants regularly gave Paulo pain mediation (Ibuprofen) both during and in between his appointments to help alleviate and manage his symptoms prior to treatment. In sum, the evidence indicates that defendants scheduled Paulo for dental appointments as was reasonably feasible for them to provide and did not disregard his pain in the interim. For these reasons, I decline to grant Paulo summary judgment on Count VI.

1      1.   Count VII

2          In Count VII, Paulo alleges that defendants were deliberately indifferent to his serious

3  dental need by not filling a chip in one of his teeth. ECF No. 27 at 32–36. Dentist Craig Rose

4  initially examined the tooth in question on August 5, 2019. *Id*. at 32. Paulo alleges that at that

5  appointment, Dr. Rose stated that he would "have to wait until the pain was worse before [he]

6  would treat Plaintiff." *Id*. Paulo filed a grievance three days later urging the prison to "provide

7  [him] with whatever treatment that [he] need[s]" and alleging that Dr. Rose had claimed that he

8  was not able to provide fillings and that extraction would have to wait until the tooth is

9  "extremely painful". *Id*. N. Peret denied Paulo's grievance on September 19, 2019, stating, in sum,

10 that the dental records indicated that the chip in Paulo's filling was "small" and had "no decay

11 present"; that Paulo had indicated that the tooth is "sensitive sometimes but doesn't hurt"; and

12 that Dr. Rose had explained to Paulo that if he replaced the filling, the tooth "might start hurting

13 more and that [Paulo] elected to defer the treatment at that time." *Id*. at 33. The denial also

14 invited Paulo to send another kite on the matter "so that [he] will be scheduled for reassessment

15 of the said tooth." *Id*. Paulo submitted a request on October 6, 2019, for treatment of the chip. *Id*.

16 at 34. Defendants responded to the kite by stating that Paulo had been seen by two dentists

17 about this minor chip and that it was determined that "no treatment was necessary/or

18 recommended." ECF No. 92-2 at 20. After a several more rounds of grievances and responses, the

19 prison denied Paulo's request for additional treatment because Paulo had supposedly rejected

20 the only course of treatment the prison was able to provide for his situation and Dr. Rose had

21 already made a medically sound determination of what he thought was appropriate for the

22 situation. *Id*. at 35–36.

23          In their motion for summary judgment and response to Paulo's motion for summary

24 judgment, defendants state that the medical record indicates that Paulo was seen again by Dr.

25 Rose for this issue on August 15, 2019, where at that time, Dr. Rose filled the chip. ECF No. 88 at

26 22–23; ECF No. 109 at 12. Defendants thus argue that Paulo cannot demonstrate any harm

sufficient to make out a deliberate indifference claim resulting from this mere ten-day delay. *Id*. However, the medical record to which defendants cite—ECF No. 92—does not evince that Paulo's chip was filled on August 15, 2019, and rather actually suggests the opposite: that the chip remained an ongoing issue well into at least October 2019. ECF No. 92-2 at 20.[3]

I make my analysis based on the available contemporaneously created evidence in the record.[4] The record indicates that, at core, a dental professional (Dr. Rose) examined Paulo's tooth on August 5 and determined that treatment for the chip was not advised and/or possible. ECF. 103-1 at 14–23. It is unclear whether a second dentist also examined Paulo's tooth and agreed with Dr. Rose, though the record suggests that is the case. ECF No. 92-2 at 20. Even if not, "a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference." *Drumwright v. Pascua*, 2021 U.S. Dist. LEXIS 32707, 2021 WL 675359, at *4 (E.D. Cal. Feb. 22, 2021) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). "Prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care." *Guerrier v. Legrand*, 2012 U.S. Dist. LEXIS 186399, *15–16 (Nev. D. Dec. 4, 2012) (citing *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986)).

Paulo's claim fails because he provides no evidence that the course of treatment that Dr. Rose took for his chipped filing was medically unacceptable under the circumstances. Paulo's numerous requests for alternative treatment or his subjective opinion that Dr. Rose's actions were inadequate are insufficient. *Id*. ("Prison medical staff do not violate the Eighth Amendment

---

[3] I cannot be sure if this line of argument and representation was an honest error on defendants' part, or an intentional misrepresentation to the court, but in advancing fact-specific arguments to the court, defendants are cautioned this is unacceptable.

[4] Which I note is more consistent with a pro se prisoner's papers than with the account proffered by defendants, who are fully represented by counsel.

simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient.") (citing *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981)). Simply put, absent evidence or documentation demonstrating that Dr. Rose's course of treatment was objectively medically unacceptable, Paulo's claim boils down to a mere disagreement with Dr. Rose's diagnosis and treatment. *See United States v. Sheppard*, 2012 U.S. Dist. LEXIS 98733, *5 (Nev. D. July 17, 2012) (rejecting plaintiff's deliberate indifference claim because, absent documentation proving the need for Oxycodone, he has "only shown he merely disagrees with [the doctor's] diagnosis and treatment. . . [and] [h]e is therefore not entitled to Oxycodone while incarcerated."); *see also Guerrier*, 2012 U.S. Dist. LEXIS 186399, at *19–20 (finding defendant doctor not deliberately indifferent for not prescribing surgery for plaintiff's hernia where plaintiff submitted no evidence that surgery was medically necessary on the dates on which defendant doctor examined plaintiff and alternative treatment recommendation to "wear a truss" was consistent with previous doctor's recommendation). For this reason, I deny Paulo summary judgment on Count VII.

        B.   *Defendants' motion for summary judgment is granted in part and denied in part.*

          a.   Count I: (Deliberate Indifference)

Defendants argue that they are entitled to summary judgment on Count I because Paulo did not exhaust his available administrative grievances. (ECF 88 at 11–12.) For the same reason that I deny Paulo's motion for summary judgment on Count I, I grant summary judgment in favor of defendants. Defendants have demonstrated that they provided an available administrative remedy process for which Paulo failed to fully exhaust prior to filing his initial complaint. Though Paulo alleges that defendant Hubbard-Pickett confiscated his grievance because the grievance coordinators had purportedly "lost" his related documents (ECF No. at 107–108), Paulo provides no evidence at this late stage to support that claim. This is insufficient to raise a genuine issue of material fact.

1   Because I grant defendants summary judgment on Claim I, I deny Paulo's related request

2   for a preliminary injunction. ECF No. 114.

3       b.   Counts II, III, IV & V (Claims regarding the common fare diet)

4   Defendants argue that they are entitled to summary judgment on Counts II, III, IV, and V

5   because defendant Calderin did not impose a substantial burden on Paulo when he did not allow

6   Paulo to have the common fare diet, nor did he discriminate against or single out Paulo as a

7   Buddhist, and the common fare diet does not violate the Establishment Clause. In the

8   alternative, defendants argue that defendants Williams and Wickham are entitled to summary

9   judgment on Counts II, III, IV, and V because they were not personally involved with the

10  underlying alleged unconstitutional conduct and/or that defendants Williams and Wickham

11  and defendant Calderin are entitled to qualified immunity on Counts II, III, IV and V.

12  Because I granted Paulo summary judgment on Counts II and III, I deny defendants

13  summary judgment, and as explained *infra*, I grant defendants Williams and Wickham summary

14  judgment for lack of personal involvement for Counts II and III and find that Defendant Calderin

15  is not entitled to qualified immunity for those counts.

16  I grant defendants summary judgment on Counts IV and V for the same reasons I denied

17  Paulo summary judgment on those counts: he fails to provide sufficient evidence, in this case, to

18  demonstrate a genuine issue of material fact supporting either his Equal Protection or

19  Establishment Clause claim. Despite his summary allegations that defendant Calderin

20  discriminated against non-Protestant prisoners in approving common fare diet requests, Paulo

21  fails to provide the court at this late stage with any supporting evidence of that allegation, or

22  with any other evidence of religious discrimination by the prison or its officials. *See Boss v. City of*

23  *Mesa*, No. 17-17255, at *6 (9th Cir. Aug. 22, 2018) ("Conclusory allegations that the City had an

24  unconstitutional policy are insufficient to survive summary judgment.") (citing *Sandoval v. Las*

25  *Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014)).

26

Because I grant defendants summary judgment on Counts IV and V, there is no need to reach a decision on the merits on the issue of whether defendant Calderin is entitled to qualified immunity or whether defendants Williams and Wickham can properly be held liable under § 1983 for those claims.

                i.   Personal Participation (Counts II and III)

Defendants argue that defendants Williams and Wickham are entitled to summary judgment on the claims related to the denial of the common fare diet because they were not personally involved with the underlying alleged unconstitutional conduct. ECF No. 88 at 18–19. Liability under section 1983 requires personal participation by the defendant. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") (citation omitted). Because "inmates lack a separate constitutional entitlement to a specific grievance procedure," involvement in the appeals process is insufficient alone to constitute personal participation. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Defendants claim that the extent of defendants Williams and Wickham's involvement was in denying Paulo's grievance no. 2006-30-81049 and that they had no part in the decision, nor authority to grant or deny his request for the common fare diet. Paulo does not provide any evidence to the contrary. Because there is no material dispute of fact here, I determine that defendants Williams and Wickham are entitled to judgment as a matter of law. *See Hines v. Faulkner*, 2023 U.S. Dist. LEXIS 50873, *17 (Nev. D. Mar. 10, 2023) ("Defendant's response to Plaintiff's grievance is insufficient to establish personal participation because Defendant lacked decision-making authority to resolve the underlying issue grieved.").

                ii.   Qualified Immunity (Counts II and III)

Defendants argue that if this court finds for Paulo on the religious diet claims, that defendant Calderin is entitled to qualified immunity because his act of denying Paulo the diet

did not violate a clearly established constitutional right. ECF No. 88 at 19–21. Defendants

contend specifically that qualified immunity is appropriate here because no clearly established

federal law requires prison officials to give the common fare diet to Buddhist inmates. *Id.* at 20.

Qualified immunity insulates public officials "from liability for civil damages insofar as

their conduct does not violate clearly established constitutional rights of which a reasonable

person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "all but the plainly

incompetent or those who knowingly violate the law." *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir.

2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determining whether a defendant is entitled to qualified immunity in a § 1983 action

entails a two-part, conjunctive analysis exercised in the order the court deems appropriate.

First, a court must consider whether the defendant's actions violated a constitutional right.

*Conn v. City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views

facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965,

969 (9th Cir. 2002). Second, the court must determine whether the constitutional right was

clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 1062

(quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should

consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533

U.S. at 201. It is the plaintiff's burden to show that the constitutional right was clearly

established. *Sorrels*, 290 F.3d at 969.

I have already determined *supra* that defendant Calderin's actions violated a

constitutional right. The second part of the inquiry is whether that constitutional right was

clearly established. *Conn*, 572 F.3d at 1062. The heart of the qualified immunity doctrine is

ensuring that officials had "fair warning their conduct is unconstitutional." *Ellins v. City of Sierra*

*Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013). While qualified immunity does not even go as far as to

require a case directly on point, it is difficult to imagine a case more directly on point than a previous federal injunctive order issued against defendant Calderin directing him to allow a Buddhist prisoner access to the common fare diet because his denial of such likely constituted a violation of his constitutional rights. *See Sandoval*, 2018 WL 5114134; *cf. Guardado*, 2022 WL 867234 (same re non-Buddhist prisoner); *Pompilius*, 2021 WL 414534 (same). Because I find that defendant Calderin had fair notice that his conduct was unconstitutional when he denied Paulo the common fare diet, I find that he is not entitled to qualified immunity on Counts II and III.

### c.   Counts VI & VII (Deliberate Indifference)

I grant defendants summary judgment on Counts VI and VII for the same reasons I deny summary judgment in Paulo's favor: Paulo fails to demonstrate that defendants' response to his general dental issues and pain was deliberately indifferent (Count VI) and fails to prove how the chosen course of treatment for his chipped tooth was not medically acceptable under the circumstances (Count VII). Because Paulo provides no evidence that raises a triable issue of fact for either of these claims, I grant defendants summary judgment Counts VI and VII.

### d.   Monetary Damages (Counts II and III)

Finally, defendants move for summary judgment on the grounds that Paulo is not entitled to the requested monetary damages against defendants in their official capacities on Counts I, II, III, IV, V, VI and VII pursuant to the Eleventh Amendment. ECF No. 88 at 23. Given my resolution of the parties' cross motions for summary judgment, only Counts II and III remain relevant for this analysis.

The Eleventh Amendment bars suits for money damages in federal court by a citizen against a state or its agencies unless the state has waived such immunity or Congress has abrogated such immunity by statute. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). Nevada has not waived its Eleventh Amendment immunity. Nev. Rev. Stat. § 41.031(3). 42 U.S.C. § 1983 only creates jurisdiction for suits against "persons," and neither a state nor its employees acting in their official capacities are "person[s]" who can be sued under § 1983. *Will v. Mich. Dep't of State*

1  *Police*, 491 U.S. 58, 66 (1989). As such, I dismiss Paulo's claims for monetary damages against

2  defendant *Calderin* in his official capacity for Counts II and III. *Warren v. Wyant*, 563 Fed. Appx.

3  576, 579 (9th Cir. March 17, 2014) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

4  **III.     Conclusion**

5          IT IS THEREFORE ORDERED that Paulo's motion for summary judgment **[ECF No.**

6  **108] is GRANTED IN PART AND DENIED IN PART** as set forth above.

7          IT IS FURTHER ORDERED that defendants' motion for summary judgment **[ECF No.**

8  **88] is GRANTED IN PART AND DENIED IN PART** as set forth above.

9          IT IS FURTHER ORDERED that Paulo's motion for a preliminary injunction **[ECF No.**

10  **114] is DENIED.**

11          DATED: September 25, 2023

12                                                          _____

13                                                          Cristina D. Silva
                                                            United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26